546 A.2d 96

**COMMONWEALTH of Pennsylvania**

v.

**Darrell SCOTT, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1988.

Filed July 29, 1988.

Thomas A. Thornton, Assistant Public Defender, Harrisburg, for appellant.

Yvonne A. Okonieski, Deputy District Attorney, Harrisburg, for Com., appellee.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Dauphin County following Darrell Scott's conviction for aggravated assault. We affirm.

During the 1985–86 school year, Rawn Marshall was a student completing his eighth grade semester at the Scott Intermediate School in Harrisburg, Pennsylvania. On April 18, 1986, the appellant, Darrell Scott, decided to visit his brother at the intermediate school with his two nephews. Prior to his visit to the school, Scott had never met Rawn Marshall.

At approximately 12:00 noon, during physical education class, Marshall became involved in a argument with an unidentified student during a basketball game. The fray ended uneventfully, however, when Marshall was leaving school at approximately 4:00 p.m., the individual who argued with him during gym class, along with several other young men, approached him. Scott came forward from the group and proclaimed that "a friend of mine wants to fight you." Undaunted by Scott's provocations, Marshall continued walking without a response. Scott then lunged at Marshall, and struck him on the side of his head. Marshall temporarily lost his balance from the blow, but then recovered and sprinted to the principal's office. There, he related the course of events to the principal as well as to his mother. The principal then summoned the police.

Following an investigation of the events at the intermediate school, Scott was arrested and charged with aggravated assault, 18 Pa.C.S. § 2702(a)(5). On February 17, 1986, Scott was tried before a jury in the Court of Common Pleas Dauphin County and convicted. Post-verdict motions were filed and denied by the court. On September 22, 1987, Scott was sentenced to serve not less than two months nor more than twenty-three months incarceration. This appeal followed.

Scott advances the following two issues for our review: (1) whether the evidence adduced at trial was sufficient to sustain his conviction of aggravated assault pursuant to 18 Pa.C.S. § 2702(a)(5); and (2) whether the trial court erred in refusing to instruct the jury that an employment relationship must be found between the victim and the school before § 2702(a)(5) is applicable.

Scott initially contends that the evidence adduced at trial was insufficient as a matter of law in establishing that he committed aggravated assault pursuant to section 2702(a)(5). Specifically, Scott maintains that the Commonwealth failed to prove that his conduct was perpetrated against Marshall *inside* the school building or classroom, or that the act was committed against an individual *acting within the scope of his employment.* Both of these crite-

ria, he avows, are requisite elements to sustain a conviction under § 2702(a)(5).

Generally, the following test is applied when this court reviews the sufficiency of evidence sustaining a conviction:

> The test of sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the [trier of fact] could properly have based [the] verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. In reviewing the evidence, we must consider it in the light most favorable to the Commonwealth, which won the verdict at the trial court.

*Commonwealth v. Dunlap*, 351 Pa.Super. 43, 45, 505 A.2d 255, 256 (1985) (citations omitted). Here, Scott was convicted of aggravated assault. Section 2702 of our Crimes Code defines aggravated assault under subsection (a)(5) as follows:

> (a) **Offense defined.**—A person is guilty of aggravated assault if he:
>
> (5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member, other employee or student of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school.

18 Pa.C.S. § 2702(a)(5).

Scott submits that a reading of the legislative debate surrounding section (a)(5) undeniably discloses that our lawmakers intended to limit criminal responsibility under subsection (a)(5) to those who perpetrate aggravated assaults *inside* school buildings. We note however, that Scott failed to promote this claim before the trial court in his post-verdict motions.

■ It is now axiomatic that issues which are not raised in the trial court, or preserved for review in post-trial motions, cannot be raised for the first time on appeal. *Commonwealth v. Monarch*, 510 Pa. 138, 507 A.2d 74 (1986); Pa.R.A.P. 302(a); Pa.R.Crim.P. 1123. In *Monarch*, our supreme court stated:

> The post-verdict motions court serves as the initial step in the appellate review of trial proceedings. Our law requires that *all* assignments of error, whether pre-trial or at trial, must be raised in post-verdict motions. The failure of a defendant to raise assignments of error in post-verdict motions results in the preclusion of later review of those issues by an appellate court. One of the purposes for this rule is to afford trial courts the first opportunity to correct error or grant new trials where necessary and, thus, obviate the need for appellate review.

510 Pa. at 146, 507 A.2d at 78 (citations omitted) (emphasis added). Scott failed to include this claim in his post-verdict motions, and it is therefore waived.

Scott also maintains that subsection (a)(5) "clearly states that the assault must be perpetrated on an individual acting in the scope of his or her employment or because of his or her employment relationship to the school." He asserts that since Rawn Marshall was merely a student, and not engaged in an employment capacity with the school, his conviction under section 2702(a)(5) cannot stand.

Essentially, Scott asks this court to read section 2702, as it applies to this case, in the following manner:

> A person is guilty of aggravated assault if he ... attempts to cause or intentionally or knowingly causes bodily injury to a ... *student of any elementary or secondary publicly funded educational institution, ... while acting in the scope of his or her employment* or because of his or her employment relationship with the school.

18 Pa.C.S. § 2702(a)(5) (emphasis added). In other words, Scott contends that this language mandates that an *elemen-*

*tary school student,* who is the victim of an assault, must stand in an *employment relationship with the school* in order for his or her assailant to be criminally liable for an aggravated assault.

In addressing this claim, we consider it elucidating to undertake a cursory review of the legislative history surrounding section 2702. While we are cognizant of the tenet of law that the discussions of our lawmakers during floor debate is not widely recognized as authoritative in gleaning the legislative intent of an enactment, our rules of statutory construction nonetheless permit us to consider the contemporaneous legislative history where the words of the statute are not explicit. 1 Pa.C.S. § 1921(c)(7). In the instant case, we believe that the legislative debate sheds light upon the reason underpinning our General Assembly's apparently untenable directive that an elementary school student must be employed by his or her school in order for the child's assailant to be criminally liable for aggravated assault under section 2702(a)(5).

The legislative history of Senate Bill 544 discloses that, in its original form, the bill did not include the word "student." It was not until the third consideration of the bill by the House of Representatives that it was amended by adding the word "student". *See generally* Pa. Legislative Journal, House, 422 (Feb. 13, 1980). The sponsor of the amendment, Representative Richardson of Philadelphia County, offered the following remarks in support of the added language:

Mr. Speaker, this is a very simple amendment. What it does is it adds the word "student." In the school district of Philadelphia in the sixth district where I live and where my legislative district encompasses, we have a serious problem concerning the fact that a number of people who come from outside the school into the school may not only inflict harm upon any school board employe or a teacher or someone who works for the board [but] would also inflict that same harm upon a student who enters inside the building who is a student of the school. We feel there needs to be some protection to protect the student inside the classroom who attends that school so that he is

protected from being beaten up also inside the school, and I, therefore, Mr. Speaker, ask for an affirmative vote on this amendment.

Pa. Legislative Journal, House, 422 (Feb. 13, 1980). It appears, therefore, that our General Assembly added the word "student," but failed to realize that the phrase "while acting in the scope of his or her employment or because of his or her employment relationship to the school" could be read to modify the word student. We cannot believe that our General Assembly, by any stretch of the imagination, meant that a seven-year-old elementary student must be employed by his or her school in order to be afforded protection under the statute. As the trial court aptly observed, "common sense and justice both dictate that the addition of the word student was not solely to protect students working in their schools. It is doubtful that any elementary school employs elementary students in any capacity. It would be unlawful...."

■ We firmly believe that our lawmaking body enacted this specific provision to deter roving groups of youths from disrupting the scholastic environment and committing assaults on teachers *and all students* seeking to secure an education. Buttressing this conclusion are the comments of Senator O'Pake during floor debate of the proposed bill:

Senate Bill No. 544 will serve notice to those who would willfully destroy the educational environment with an act of violence or terrorism, that they will be held responsible for their acts. There is no reason for our children to be intimidated and abused in our schools. A school is a place for learning—not a combat zone.... This tough legislation is needed if we hope to protect our children and teachers from the tidal wave of violence which is engulfing our schools.

Pa. Legislative Journal, Senate, 2081–2082, 2082 (Sept. 30, 1980). This noble purpose applies regardless of the student's employment relationship with the school.

■ Additionally, it is well-established that our Statutory Construction Act disfavors surplusage. We have consistently upheld the supposition that our lawmaking body is

presumed to have intended to avoid mere surplusage in the words, sentences and provisions of its laws. *Commonwealth v. Saul*, 346 Pa.Super. 155, 499 A.2d 358 (1985); 1 Pa.C.S. § 1921(a), 1922(2). Accordingly, we must construe a statute, if possible, so as to give effect to every word. *Commonwealth v. Mlinarich*, 345 Pa.Super. 269, 498 A.2d 395 (1985) *alloc. den.* 512 Pa. 115, 516 A.2d 299 (1986). Pursuant to section 2702, our parliamentarians sought to impose criminal liability for aggravated assault upon an individual who attempts to cause or intentionally or knowingly causes bodily injury to an *"employee or student* of any elementary or secondary publicly-funded educational institution."* 18 Pa.C.S. § 2702(a)(5) (emphasis added). If our General Assembly only sought to impose liability for aggravated assaults perpetrated against students acting in the scope of their employment relationship with the school, as Scott advocates, then the addition of the word "student" would have been unnecessary and mere surplusage. Anybody working for the school district would be afforded protection under the statutory scheme merely by their designation as an "employee." Giving effect to each and every word of the statute, we therefore assume that our legislature intended to protect all employees of the school district *as well as* all students.

▮ Moreover, we cannot, as a matter of statutory construction, assume that our legislature intended such an absurd or unreasonable result in their enactment. 1 Pa.C.S. § 1922; *Commonwealth v. Westcott*, 362 Pa.Super. 176, 523 A.2d 1140 (1987) *alloc. den.* 516 Pa. 640, 533 A.2d 712 (1987). Although we are constrained by the principle that penal provisions must be strictly construed, our supreme court has stated that "[a] phrase necessary to the construction of a statute may be added if it does not conflict with the obvious purpose and intent of the statute, nor in any way affects its scope." *Commonwealth v. Fisher*, 485 Pa. 8, 13, 400 A.2d 1284, 1287 (1979) (footnote omitted); 1 Pa.C.S. § 1923(c) ("Words and phrases which may be necessary to the proper interpretation of a statute and which do not conflict with its obvious purpose and intent, nor in any

way affect its scope and operation, may be added in the construction thereof.")

■ Since the statute in question is susceptible to varying interpretations, with one being absurd and the other complying with the obvious legislative intent, we will construe subsection (a)(5) as if it contained the language "or while acting in his or her role as a student" following the last word of the subsection. We believe that this interpretation will serve to effectuate the purpose of the statute until our legislature deems it appropriate to address its apparent omission. Furthermore, we do not believe that this judicially interposed language either conflicts with the obvious purport of the statute or in any way affects its scope and operation. In sum, we have reviewed all the evidence proffered at trial in the light most favorable to the Commonwealth, and accepting as true all the evidence and all reasonable inferences from that evidence, conclude that the trier of fact could reasonably have found that Scott was guilty beyond a reasonable doubt of aggravated assault under section (a)(5). Consequently, we reject Scott's strained interpretation of section 2702, and find that "student employment" is not a requisite element to sustain a conviction under section 2702(a)(5).

Scott next claims that Judge Natale erred in refusing to instruct the jury that in order to sustain a conviction under section 2702(a)(5), he must have assaulted a person who had an employment relationship with the school. Since we were unable to accept Scott's claim that subsection (a)(5) requires that the victim be in an employment relationship with the school, we similarly reject the notion that the jury should have been instructed on such an element. Having found no error in Judge Natale's jury instruction, we therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

DEL SOLE, J., files dissenting opinion.

DEL SOLE, Judge, dissenting:

I must dissent from the majority's rewriting of 18 Pa.C.S.A. § 2702(a)(5). While I agree with the majority that

what the General Assembly intended was to prevent persons from entering on school premises, engaging in altercations and disrupting the educational process, I cannot subscribe to the majority's interpretation of the subject statute.

The majority's interpretation of the statute would mean that anyone who assaults an employee of a school district or a student of the school district, *at any time*, would be subject to a charge of aggravated assault. Rather, it is my belief that the General Assembly sought to limit the upgrading the assault to the aggravated range only when the assault occurred to someone who was in a specific relationship with the school.

The majority's interpretation would mean that students who engage in an altercation on a weekend that may have been precipitated by a school sponsored sporting event the previous week would be subjected to aggravated assault charges under this Section.

I do not find Appellant's view of the statute strained. Rather, I find the majority's attempt to justify their statutory construction as strained.

Since the statute is not clearly drawn I think the best thing that this court can do is suggest that the General Assembly redraft it in order that it might serve the laudable purpose which its sponsors intended.