622 A.2d 954

**In the Interest of D.S.**

**Appeal of D.S., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1992.

Filed March 23, 1993.

Bradley S. Bridge, Philadelphia, for appellant.

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com., participating party.

Before CAVANAUGH, MCEWEN and KELLY, JJ.

KELLY, Judge:

In this appeal, we are called upon to determine whether a juvenile resident of "Cumberland House" was properly adjudicated guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(5)[1] for punching a roommate once in the jaw. We

1. § 2702 Aggravated Assault
· (a) offense defined.—A person is guilty of aggravated assault if he:
\*       \*       \*

(5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member, other employee or student of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school.

hold that there was insufficient evidence to sustain appellant's conviction of aggravated assault under 18 Pa.C.S.A. § 2702(a)(5). Accordingly, we vacate the adjudication of delinquency based upon aggravated assault.

## FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case may be summarized as follows. Appellant and T.T. both lived at "Cumberland House." At approximately 7:30 p.m., appellant walked downstairs to the living room, approached T.T., who was watching television, and punched T.T. once in the jaw, knocking him to the ground. T.T. was taken to a medical center the following day, and his jaw was wired shut for the next four weeks.

Appellant was charged with simple assault, aggravated assault, and recklessly endangering another person. At the bench trial, after the parties stipulated to the aforementioned facts, appellant demurred to the charges of aggravated assault and recklessly endangering another person.

Before ruling on appellant's demurrer, the court asked if Cumberland House was a school for the purpose of satisfying 18 Pa.C.S.A. § 2702(a)(5). Defense counsel stated that, to the best of her knowledge, Cumberland House was not a school and did not fall within the purview of the statute. The Commonwealth requested that the court take judicial notice that Cumberland House was a school. However, unsatisfied that it was a school, the court called a recess to allow the attorneys for both sides to ascertain Cumberland House's status. The court noted that if appellant could be convicted under 18 Pa.C.S.A. § 2702(a)(5), the parties would not have to argue, nor the court decide, whether appellant's one punch to the victim's jaw was an aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(1).

After trial reconvened, the Commonwealth requested the court to take judicial notice that Cumberland House was a school, because it was accredited. The court took judicial notice that it was a school, denied appellant's demurrer to

aggravated assault,[2] adjudicated appellant guilty under 18 Pa.C.S.A. § 2702(a)(5) and committed him to the Department of Public Welfare for placement. After appellant timely appealed, the trial court, in its opinion, requested that we remand for a hearing to determine whether Cumberland House is an accredited school.

On appeal, appellant presents the following two issues for our consideration:

1. MUST NOT THE JUVENILE APPELLANT'S AGGRAVATED ASSAULT ADJUDICATION BE REVERSED WHERE AN ELEMENT OF THE OFFENSE WAS NEVER ESTABLISHED; WHERE THE ADJUDICATING COURT TOOK "JUDICIAL NOTICE" OF A DISPUTED FACT OF WHICH ALL PARTIES ACKNOWLEDGED PERSONAL IGNORANCE, AND WHERE THERE IS NO STATEMENT ON THE RECORD BY THE PROSECUTOR OF HOW, WHERE, WHEN, FROM WHOM, OR EVEN WHETHER SHE HAD "ASCERTAINED" THE FACT IN ISSUE DURING A BRIEF RECESS?

2. DID NOT THE EVIDENCE ESTABLISH THAT JUVENILE APPELLANT HAD COMMITTED NO MORE THAN A SIMPLE ASSAULT WHERE AT 7:30 P.M. HE PUNCHED ANOTHER YOUNG MAN ONE TIME IN THE JAW IN THE LIVING ROOM OF CUMBERLAND HOUSE, WHERE THE TWO RESIDED?

Appellant's Brief at 2.[3]

## FACTUAL FINDING OF CUMBERLAND HOUSE AS A SCHOOL

Appellant first argues that the trial court abused its discretion in finding that Cumberland House is a school. He

---

**2.** The court later granted appellant's demurrer to recklessly endangering another person.

**3.** Appellant concedes that his actions constituted simple assault, 18 Pa.C.S.A. § 2701(a). Accordingly, he seeks a reversal of the adjudica-

maintains that whether Cumberland House is a school is not a matter of common knowledge, and therefore, is not capable of judicial notice. Moreover, appellant argues, there is no evidence of record to support a finding that Cumberland House is a school for purposes of 18 Pa.C.S.A. § 2702(a)(5).

The Commonwealth argues that the trial court could have taken judicial notice of a fact which is not common knowledge, as long as the fact is *capable* of accurate and ready verification. The Commonwealth additionally contends that appellant had ample opportunity to rebut the evidence consisting of judicial notice. We cannot agree.

■ A court may take judicial notice of an indisputable adjudicative fact.[4]  *Commonwealth ex rel. Duff v. Keenan*, 347

---

tion of aggravated assault; he does not seek a reversal of adjudication of delinquency, which is still grounded upon the simple assault.

4. "Adjudicative facts" are "factual matters concerning the parties to an administrative proceeding...." Black's Law Dictionary 39 (5th ed. 1979).

> Another species of facts figures prominently in discussions of judicial notice which, to continue to employ the terminology coined by Professor K.C. Davis, are denominated "legislative" facts. Judicial notice of these facts occurs when a judge is faced with the task of creating law, by deciding upon the constitutional validity of a statute, or the interpretation of a statute, or the extension or restriction of a common law rule, upon grounds of policy, and the policy is thought to hinge upon social, economic, political or scientific facts.

McCormick on Evidence, § 328 at 921 (3rd ed. Handbook Series 1984) (footnotes omitted). The difference between adjudicative and legislative facts may be further described as follows:

> The facts of which courts take judicial notice are sometimes classified as either adjudicative or legislative. Adjudicative facts are facts about the particular parties to the controversy, their activities, their property, and their interests. Facts which help answer who did what, when, where, why, how, and with what motive and intent are all adjudicative. It is to these facts that the jury in a jury trial, or the judge in a non-jury trial, applies the existing law. Legislative facts, on the other hand, are used exclusively by the judge when he is developing law and policy. They are used not to discover the facts to which the law will be applied, but rather to discover and develop the law itself. Thus, when the judge is interpreting a statute, or ruling on its constitutionality, or creating new law to bridge gaps in existing doctrines, the facts upon which he relies are termed legislative facts.

Fortunata Giudice and C. William Kraft, *The Presently Expanding Concept of Judicial Notice*, 13 Villanova L.Rev. 528, 533 (1968) (footnotes omitted). Pursuant to these principles, the fact which the trial court judicially noticed is an adjudicative fact.

Pa. 574, 33 A.2d 244 (1943). A fact is considered indisputable if it "is so well established as to be a matter of common knowledge." *Albert Appeal,* 372 Pa. 13, 20, 92 A.2d 663, 666 (1952). *See also Haber v. Monroe County Vo–Tech. School,* 296 Pa.Super. 54, 60, 442 A.2d 292, 295–96 (1982), *quoting Petro v. Kennedy Tp. Bd. Commissioners,* 49 Pa.Cmwlth. 305, 311, 411 A.2d 849, 852 (1980) (judicial notice is appropriate if fact is so well-known as not to require supporting evidence). Conversely, a court cannot take judicial notice of a disputed question of fact. *Haber, supra.* By taking judicial notice of a fact so commonly known, the court avoids the needless formality of introducing evidence to prove an incontestable issue. *Sheppard v. Old Heritage Mutual Ins. Co.,* 492 Pa. 581, 425 A.2d 304 (1980); *Haber, supra.*

■ Judicial notice itself does not necessarily establish a fact. Judicial notice of a fact, when correctly taken, constitutes evidence, which like any evidence, may be rebutted. *See Commonwealth v. Covert,* 322 Pa.Super. 192, 198, 469 A.2d 248, 251 (1983) ("judicial notice should not serve to deny the opposing party the chance to disprove the fact sought to be judicially noticed"). If the evidence derived from judicial notice remains unrebutted, it may support a finding of fact.

■ The careful use of judicial notice is especially important in criminal cases. A court may judicially notice an indisputable fact even though it establishes an element of a crime. *See, e.g., Commonwealth v. Bigelow,* 250 Pa.Super. 330, 333 n. 2, 378 A.2d 961, 963 n. 2 (1977), *aff'd,* 484 Pa. 476, 399 A.2d 392 (1979) (court could have taken judicial notice that Philadelphia is a city of the first class in prosecution for carrying a firearm on a public street in a city of the first class); *Commonwealth v. Morgan,* 265 Pa.Super. 225, 401 A.2d 1182 (1979) (*dicta* ) (in determining whether an element of possessing an instrument of crime existed, court may take judicial notice that a gun is commonly used for criminal purposes, but may not be able to take judicial notice that certain other instruments are commonly used for criminal purposes). However, when the "fact" is not so well-known within the community as to be indisputable, the court cannot

judicially notice it to satisfy an element of a crime. *See Commonwealth v. Brose,* 412 Pa. 276, 194 A.2d 322 (1963) (whether radar signs were posted on side of road on date appellant was speeding was a fact question to be supported by evidence adduced by the Commonwealth; judicial notice was improper); *see also Commonwealth v. Brown,* 312 Pa.Super. 383, 458 A.2d 1012 (1983) (judicial notice of situs of milepost 290 on Route 22 was improper because it was not a matter of common knowledge).

Some jurisdictions apply a second basis for allowing judicial notice. For example, Rule 201(b) of the Federal Rules of Evidence provides:

> **(b) Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be called in question.[5]

*See also* Fortunata Giudice and C. William Kraft, *The Presently Expanding Concept of Judicial Notice, supra* at 532–33 n.

---

5. In its entirety, Rule 201 provides:
   **RULE 201. JUDICIAL NOTICE OF ADJUDICATIVE FACTS**
   **(a) Scope of Rule.** This rule governs only judicial notice of adjudicative facts.
   **(b) Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be called in question.
   **(c) When Discretionary.** A court may take judicial notice, whether requested or not.
   **(d) When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.
   **(e) Opportunity to Be Heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
   **(f) Time of Taking Notice.** Judicial notice may be taken at any stage of the proceedings.
   **(g) Instructing Jury.** In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

22, *quoting* Uniform Rule of Evidence 9 ("Facts Which Must or May Be Judicially Noticed"); McCormick on Evidence, *supra* § 330 ("Facts Capable of Certain Verification"). Pennsylvania courts have not yet officially adopted this second approach. *Commonwealth v. Brown, supra* at 385 n. 2., 458 A.2d at 1013 n. 2.

■ Although Pennsylvania courts have not applied a "capable of verification" standard, judicial notice may be employed in somewhat similar, limited circumstances. By statute, a trial court shall treat as evidence a factual proposition that *is supported by reference to an appropriate governmental publication. See* 45 Pa.C.S.A. § 506 ("The contents of the code, of the permanent supplement thereto, and of the bulletin, shall be judicially noticed."); *Commonwealth v. Denny,* 372 Pa.Super. 317, 322–23, 539 A.2d 814, 816 (1987) (to prosecute for speeding violation, Commonwealth must show not only certification of accuracy, but also that the testing facility has been granted official testing status by the Department of Transportation; proof of official testing status may be shown by a letter under seal from the D.O.T. or by "a citation to the Pennsylvania Bulletin which lists the station as an official testing station"). *Cf. Commonwealth v. McGinnis,* 511 Pa. 520, 515 A.2d 847 (1986) (error for court to take judicial notice that *modified* breathalizer had been approved by Department of Health where uncontroverted evidence was that instrument had *not* been approved).

In *Commonwealth v. Kittleberger,* 420 Pa.Super. 104, 616 A.2d 1 (1992), we recently held that, for the trial court to take judicial notice that a certain type of radar gun was approved by the Pennsylvania Department of Transportation, the Commonwealth must refer to the published approval in the Pennsylvania Bulletin. We explained:

> In sustaining its burden of proof, the Commonwealth need not produce a certificate from PennDOT which expressly indicates approval of a particular speed timing device. Rather, the legislature has considerably lessened the Commonwealth's evidentiary burden of enabling the courts to take judicial notice of the fact that the device has been

approved by PennDOT, provided that the approval has been published in the Pennsylvania Bulletin. *See* 45 Pa.C.S.A. § 506 (providing for judicial notice) and §§ 724–725 (requiring Commonwealth agency regulations to be published in the Pennsylvania Bulletin); 75 Pa.C.S.A. § 3368(d) (requiring PennDOT to classify and approve speed timing devices by regulation).

As applied here, the certified record identified the radar gun used to measure appellant's speed as a Falcon. N.T. 7/1/91 at 4–5. PennDOT has approved Falcon radar guns for use by the Pennsylvania State Police. 19 Pa.Bull. No. 50, Part I, at 5346 (December 16, 1989). Consequently, the Commonwealth could have established the requisite element of approval in this case merely by asking the lower court to take judicial notice of the fact that the department's approval of the Falcon radar gun was published in the Pennsylvania Bulletin. 45 Pa.C.S.A. § 506.

*Id.* at 109, 616 A.2d at 3. In *Kittleberger*, because the Commonwealth did not request the trial court to take judicial notice of the fact that the approval appeared in the Pennsylvania Bulletin, an element of the offense was not established, even though the approval was *actually* published. *Id.* at 108–10, 114–15, 616 A.2d at 3, 6. Moreover, this Court was constrained from taking judicial notice of something that was neither noticed below nor supported by evidence. *Id.* at 114–15, 616 A.2d at 6.

The mere capability of ready and accurate verification is an insufficient basis for judicial notice. The record must disclose at least some reference to the authoritative source for a court to take judicial notice pursuant to 45 Pa.C.S.A. § 506. *Commonwealth v. Kittleberger, supra; Commonwealth v. Denny, supra.*

■■■ "A court may not support an adjudication of guilt with evidence not part of the trial record." *Commonwealth v. Wasiuta,* 280 Pa.Super. 256, 259, 421 A.2d 710, 711 (1980). *See also Commonwealth v. Martell,* 307 Pa.Super. 1, 5, 452 A.2d 873, 875 (1982), *citing id.* Accordingly, in reviewing a trial court decision for sufficient evidence, an appellate court

must be provided adequate indicia of what evidence the fact finder considered. *See Alko Exp. Lines v. Pennsylvania Public Utility Com.,* 152 Pa.Super. 27, 36, 30 A.2d 440, 444 (1943). *See also Wells v. Pittsburgh, Board of Ed.,* 31 Pa. Cmwlth. 1, 374 A.2d 1009. Therefore, a criminal conviction cannot stand based upon judicial notice of a *disputable* fact which otherwise lacks evidentiary support. *Commonwealth v. Brose, supra; Commonwealth v. Brown, supra.* Of course, the prosecutor's mere recitation of the Commonwealth's version of the facts does not constitute competent evidence. *Commonwealth v. Royster,* 524 Pa. 333, 339, 572 A.2d 683, 686 (1990).

Thus, in deciding whether a trial court erred in taking judicial notice, we must determine whether the notice was of an indisputable fact, *i.e.,* one which is so commonly known that it need not be supported with evidence, or one which, according to statute, is noticeable because there is recorded reference to an appropriate governmental publication, such as the Pennsylvania Bulletin. If the finding of fact is wrongly based upon judicial notice, the appellate court must then determine whether the finding was otherwise supported by evidence of record.

Pursuant to such review, we must determine whether the "fact" that Cumberland House is a school was common knowledge, whether the record includes reference to a government publication which shows that Cumberland House is certified as a school, or whether there was sufficient evidence of record to support a finding that it was a school. At trial, the court detoured the discussion of whether appellant was guilty of aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(1) to whether appellant committed an assault under subsection (a)(5). The prosecutor readily requested the court to take judicial notice that Cumberland House was a school. This discussion followed:

THE COURT: I don't know that it is.

If you can get me some indication that it is, I'll certainly take notice to the fact.

Is Cumberland House a licensed school, do you know, a CBS?

MS. NUROFF:[6] I don't know, Your Honor.

THE COURT: What?

MS. NUROFF: I don't know, Your Honor.

THE COURT: I don't know, either.

MS. NUROFF: I know that Lower Kensington is, so I would assume that they all operate the same way.

THE COURT: Well, I can't take judicial notice of an assumption, but I'll take a short recess.

MS. HARLEY: Thank you.

THE COURT: And, if it is, of course, I will overrule the demurrer on that basis.

We won't get into the one-punch situation.

\* \* \*

(A short recess was taken.)

\* \* \*

THE COURT: Alright. My understanding is that the Commonwealth has ascertained that Cumberland House is an accredited school.

I grant the Commonwealth leave to open its case, request [t]he Court to take judicial notice of the fact.

MS. McCARTNEY: Judge, I'm going to object to that.

THE COURT: Well, you can object all you want.

MS. HARLEY: Your Honor, I would request that you take judicial notice that the school is accredited, and, therefore, it comes under the meaning of the statute under Subsection 5.

THE COURT: Notice is taken.

MS. McCARTNEY: I want my objection noted, for the record.

THE COURT: It is.

What do you think she's doing there?

6. Ms. Nuroff was not identified as a witness at trial. In his brief, appellant stated that she was a school board representative.

Alright. Your demurrer's overruled, on that basis.

MS. McCARTNEY: Your Honor, the defense would rest.

N.T. January 7, 1992 at 8–10.

■ The foregoing discourse indicates that Cumberland House was not so obviously a school. None of the attorneys even knew whether it was a school. Nor did the trial court know. Therefore, whether it was a school was not common knowledge. Accordingly, judicial notice could not be based upon common knowledge.

Moreover, the Commonwealth opened its case and moved the court to take judicial notice that Cumberland House was a school, without ever referring to an authoritative governmental publication which indicated such certification. Similarly, the trial court judicially noticed the "fact" without mentioning an authoritative source.

Without some reference to a publication which confirmed a governmental agency's certification of Cumberland House as a "school," the trial court was not empowered to take judicial notice pursuant to 45 Pa.C.S.A. § 506. *Commonwealth v. Kittleberger, supra; Commonwealth v. Denny, supra.* Therefore, the trial court erred in taking judicial notice on this basis as well.[7]

Finally, the record does not disclose the basis on which the court found that Cumberland House was a school. Absent some evidentiary foundation, the court erred in finding that it was a school. In our review for sufficient evidence, therefore, we cannot treat as a fact that the assault took place in a school.[8]

7. Because judicial notice was improper, the burden never shifted to appellant to rebut the fact judicially noticed.

8. We note that we find no error in the trial court's allowing the Commonwealth to reopen its case to prove what it and the Commonwealth viewed to be an element of the crime (that the situs of the assault was a school). *See Commonwealth v. Tharp,* 525 Pa. 94, 575 A.2d 557 (1990); *Commonwealth v. Mathis,* 317 Pa.Super. 226, 463 A.2d 1167 (1983). Likewise, in its reopened case, the Commonwealth is permitted to move the court to take judicial notice of an undisputed fact.

SUFFICIENCY OF THE EVIDENCE: 18 PA.C.S.A. § 2702(a)(5) (AGGRAVATED ASSAULT FOR AS-SAULTING TEACHER, SCHOOL EMPLOYEE, OR STUDENT ACTING IN SPECIFIED ROLE)

Appellant also argues that there was insufficient evidence for the trial court to find him guilty under 18 Pa.C.S.A. § 2702(a)(5). We agree.

■ Our standard of reviewing a verdict for sufficient evidence is as follows. "On appeal, we must examine the evidence in the light most favorable to the Commonwealth, drawing all reasonable inferences therefrom." *Commonwealth v. Gerulis*, 420 Pa.Super. 266, 273, 616 A.2d 686, 689 (1992), *quoting Commonwealth v. Berkowitz*, 415 Pa.Super. 505, 515, 609 A.2d 1338, 1343 (1992), *allocatur granted*, 531 Pa. 650, 613 A.2d 556 (1992). The evidence is sufficient to support a verdict if the fact finder "could have reasonably determined from the evidence that all of the necessary elements of the crime were established." *Gerulis, supra, quoting Berkowitz, supra.*

The criminal provision at issue is 18 Pa.C.S.A. § 2702(a)(5):

**§ 2702. Aggravated Assault**

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

\*    \*    \*

(5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member, other employee or student of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school.

This Court has appended the words "or while acting in his or her role as a student" to the end of this provision to effectuate the statutory purpose. *Commonwealth v. Scott*, 376 Pa.Super. 416, 546 A.2d 96 (1988), *allocatur denied*, 522 Pa. 612, 563 A.2d

497 (1989).[9] Therefore, to be convicted under this subsection, a defendant must have assaulted a victim while that victim was acting in the scope of his or her employment relationship to the school, 18 Pa.C.S.A. § 2702(a)(5), or "in his or her role as a student." *Scott, supra.*

■ In *Commonwealth v. Scott, supra,* we did not reach the question of whether an assault must occur on school grounds for it to constitute an aggravated assault under section 2702(a)(5).[10] The issue is now ripe for our disposition.

Section 2702(a)(5) focuses on the status of the victim. The only reference to schools is part of a description of the status of the victim, who must be an employee acting in the scope of his or her employment, 18 Pa.C.S.A. § 2702(a)(5), or a student while acting in his or her role as a student, *Commonwealth v. Scott, supra* at 424, 546 A.2d at 100. The statute itself provides no geographical limit.

In addition to the language of section 2702(a)(5), the texts of the two other statutes which were enacted along with the instant statute further indicate that no geographical limitation

---

**9.** In *Commonwealth v. Scott, supra,* this Court discussed at length the legislative history and intent of the legislature in adding subsection (a)(5). This Court noted that "the statute in question is susceptible to varying interpretations...." *Id.* at 424, 546 A.2d at 100. In *Scott,* the appellant argued that the statute did not apply to him because the victim of his assault, a student, was not employed by or in any employment relationship with the school. We found the appellant's interpretation to be strained and after an examination of the legislative history, held that the legislature intended to protect students even if they were not acting in an employment capacity. *Id.* at 421, 546 A.2d at 99. We explained that when the legislature included the word "student," it failed to move the modifying phrase "while acting ..." to its proper position, causing it to improperly modify "students." Utilizing the rule enunciated by our Supreme Court in *Commonwealth v. Fisher,* 485 Pa. 8, 13, 400 A.2d 1284, 1287 (1979), allowing judicial addition of a phrase to effectuate the intent of the legislature, this Court concluded that § 2702(a)(5) was meant to protect a student from an assault "while [he or she is] acting in his or her role as a student." In addition to "while [he or she is] acting in the scope of his or her employment," as the statute originally stated. *Id.* at 424, 546 A.2d at 100." [G]iving effect to each and every word of the statute, we therefore assume that our legislature intended to protect all employees of the school district as well as all students." *Id.*

**10.** In *Scott,* appellant had failed to preserve this issue for appellate review.

was contemplated for the aggravated assault offense.[11] For example, in one companion statute, the same legislature expressly made location an element of the crime of possession of weapons on school property:

### § 912. Possession of weapon on school property.

\* \* \*

**(b) Offense defined.**—A person commits a misdemeanor of the first degree if he possesses a weapon in the buildings of, on the grounds of, or in any conveyance providing transportation to or from any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school.

18 Pa.C.S.A. § 912(b). Moreover, in another part of the Act of October 16, 1980, P.L. 978 (the "1980 Act"), the legislature added to the anti-obscenity statute, making illegal the display of any obscene explicit sexual materials "... in any business or commercial establishment where minors, as a part of the general public or otherwise, are or will probably be exposed to view all or any part of such materials." 18 Pa.C.S.A. § 5903(a)(1).

While the companion portions of the 1980 Act each specified geographical location as an element of the offense, the aggravated assault provision did not. This distinction among simultaneously enacted statutes further evidences the legislative intent to protect certain citizens while acting in specific roles, regardless of the situs of an assault. Therefore, the location of the assault is not an element of 18 Pa.C.S.A. § 2702(a)(5).

Although the situs of an assault is not an element of this statute, the location of an assault is probative to the disposi-

---

**11.** Subsection (a)(5) of the aggravated assault statute was enacted along with two other pieces of legislation. *See* Act of October 16, 1980, P.L. 978 [hereinafter "1980 Act"]. The first part of the act sought to curb "the tidal wave of violence which is sweeping our schools," and the second part empowered district attorneys to arrest and prosecute violators of the Anti–Obscenity Law. Pa.Legislative Journal, Senate, 2081 (September 30, 1980). The instant case involves the first part of the act, which may be further subdivided into two separate statutes: 18 Pa.C.S.A. § 2702(a)(5), the statute at issue, and 18 Pa.C.S.A. § 912, which made an offense the carrying of a weapon on school grounds.

tive issue of whether the victim was acting in his or her role as an employee or student. The fact finder should consider all relevant circumstances, including the situs of an attack, in determining whether the victim of an assault was acting in one of the specific roles which our General Assembly has granted special protection. Because the situs of the assault is so interwoven with the status of the victim, the finding of fact that a person was assaulted at a school must be properly supported.

■ As we held above, the trial court erred in finding that the situs of the assault, Cumberland House, was a school. We must now review the entire trial transcript for any other evidence which may support a finding of guilt under section 2702(a)(5). At appellant's trial for simple assault, aggravated assault, and recklessly endangering another person, the Commonwealth and appellant stipulated as follows:

MS. HARLEY: Your Honor, if I may, if the Commonwealth were to proceed with live testimony today, the Commonwealth would first call [T.T.], fifteen years old.

Mr. [T.] would state that, back on December 10 of 1991, he was living at Cumberland House, C–U–M–B–E–R–L–A–N–D, which is located at 248 West Girard Avenue, here in the city and county of Philadelphia.

He would state that, at that time, defendant, Mr. [S.], was, also, living at Cumberland House.

He would state that, at, approximately, 7:30 p.m., while he was in the living room, watching television, the defendant, Mr. [S.] came into the room. The lights were turned off.

The defendant approached the complaining witness, Mr. [T.], and punched him, one time, with the defendant's right fist in the complaining witness' jaw, knocking the complaining witness to the ground.

At that time, assistants came and separated the defendant from the complaining witness.

Mr. [T.] would state that he was taken to Girard Medical Center, the following day; that being, December 11 of 1991.

THE COURT: Taken where?

MS. HARLEY: Girard Medical Center, located at 8th and Girard Streets.

THE COURT: Girard Avenue.

MS. HARLEY: Girard Avenue—excuse me, Your Honor—because, when he awakened, on December 11, his face was swollen and sore, and he could not open his mouth.

He would state that he, then, had an operation when he awakened from that. His jaw and entire mouth [were] wired closed.

He would state that the—his—jaw was wired closed for, approximately, four weeks, at which point, he returned to a private doctor, who removed the wires.

Your Honor, additionally, the complaining witness would state that he made no attempt to strike the defendant and said nothing to him.

Additionally, Your Honor, there would have been a stipulation, by and between counsel, as to the medical records.

I would ask that they be marked, Commonwealth Exhibit, C–1, and moved into evidence.

I'd just, if I can.

Counsel has seen them.

\*　　\*　　\*

(Medical records were marked for identification as, Commonwealth's Exhibit, C–1).

\*　　\*　　\*

MS. HARLEY: And, Your Honor, I'd mark—

THE COURT: Pass them up.

MS. HARLEY: —off for you, in which it states that the complaint—

THE COURT: I'll read it.

MS. HARLEY: Thanks.

\*　　\*　　\*

(Handed to The Court.)

\*　　\*　　\*

MS. HARLEY: And, Your Honor, I'll just note, for the record, that the treating physician was a Dr. Branconaro, B–R–A–N–C–O–N–A–R–O.

THE COURT: Alright. I'm being referred to the Operating Room Record Chart, copy, dated, 12/13/91.

MS. HARLEY: Your Honor, is that accepted in evidence?

THE COURT: You can keep that.

MS. HARLEY: Thank you.

\* \* \*

(Commonwealth's Exhibit, C–1, was admitted into evidence.)

\* \* \*

MS. HARLEY: Your Honor, with that testimony, Commonwealth would rest.

MS. McCARTNEY: Judge, the defense would demur to the charges of Aggravated Assault and REAP.

N.T. January 7, 1992 at 3–6.[12]

The trial evidence did not address whether the victim was acting in his role as a student. There was no valid evidence that T.T. was participating in any school related event or that he was even in a school. To the contrary, the stipulation merely established that T.T. was watching television at 7:30 p.m. in the living quarters of Cumberland House. The Commonwealth did not prove that the recipient of the punch was acting in his role as a student. Therefore, appellant is not guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(5). *Commonwealth v. Scott, supra.*[13]

---

**12.** This evidence established that appellant at least committed a simple assault. 18 Pa.C.S.A. § 2701(a)(1). Appellant does not contend otherwise.

**13.** Research of 18 Pa.C.S.A. § 2702(a)(5) and its legislative history leads us to question the breadth of this criminal statute's applicability. Specifically, we see difficulty in discerning whether this statute would render a student-on-student incident which would otherwise constitute a simple assault under 18 Pa.C.S.A. § 2701(a)(1) an aggravated assault. Recognizing that this specific question is not before the court, we can only call to the attention of the legislature the apparent discrepancy. *Cf. Commonwealth v. Scott, supra* 376 Pa.Super. at 425, 546 A.2d at 101

(Del Sole, J., dissenting) ("Since [18 Pa.C.S.A. § 2702(a)(5)] is not clearly drawn, I think the best thing that this Court can do is suggest that the General Assembly redraft it in order that it might serve the laudable purpose which its sponsors intended.").

On the one hand, the statute applies to a "person" who commits the assault. 18 Pa.C.S.A. § 2702(a). However, the thrust of the legislative history suggests that the legislature sought to make aggravated only a new brand of brazen assaults. For example, Representative Richardson explained:

> Mr. Speaker, this is a very simple amendment. What it does is it adds the word "student." In the school district of Philadelphia in the sixth district where I live and where my legislative district encompasses, we have a serious problem concerning the fact that a number of people who *come from outside the school into the school may not only inflict harm upon any school board employee or a teacher or someone who works for the board would also inflict that same harm upon a student* who enters inside the building who is a student of the school. We feel there needs to be some protection to protect the student inside the classroom who attends that school so that he is protected from being beaten upon also inside the school, and I, therefore, Mr. Speaker, ask for an affirmative vote on this amendment.

Pa.Legislative Journal, House, 422 (February 13, 1980) (emphasis added). The House adopted the amendment. *Id.*

The next recorded legislative history arises from the Senate floor. Senator O'Pake stated:

> In recent years, school discipline has evolved from teachers confiscating chewing gum, to relieving their students of knives and guns. School violence is not just a problem in Pennsylvania's inner-cities, it strikes just as often in our suburban and rural schools; and it is reaching epidemic proportions.
>
> In public hearings around the State last year, the Senate Committee on Judiciary heard testimony of teachers suffering serious injuries at the hands of violent students. In the western part of the State, a teacher ordered an unruly student to her office and as a result, the teacher was viciously pushed against the wall breaking her pelvis. In the eastern part of the State, a teacher disciplined a student in a corridor; and the student came back later with a knife and chain and attacked the teacher.
>
>           \*      \*      \*
>
> Recent statistics from the Philadelphia Board of Education indicate that the problem is growing steadily. In that district alone, there were 424 assaults on teachers reported last year, an increase of seven per cent, and reported assaults on other students numbered 434, a twenty-six per cent increase. Over 100 murders are committed each year in the nation's schools.
>
>           \*      \*      \*

Pa.Legislative Journal, Senate, 2082 (September 30, 1980). *See also* Pa.Legislative Journal, House, 2460 (October 1, 1980) (remarks of Representative O'Donnell) ("... I think we are all concerned about the increasing level of violence in the schools, especially directed at teachers....").

## SUFFICIENCY OF THE EVIDENCE: 18 PA.C.S.A. § 2702(a)(1) (AGGRAVATED ASSAULT FOR INFLICTING OR ATTEMPTING TO INFLICT SERIOUS BODILY INJURY)

Finally, we must address the Commonwealth's contention that this Court can either adjudicate appellant delinquent of aggravated assault under section 2702(a)(1) or remand to the trial court for a retrial on that charge. The trial court never decided whether appellant was guilty of aggravated assault for attempting to inflict or actually causing serious bodily injury. 18 Pa.C.S.A. § 2702(a)(1). As stated above, although the Commonwealth may have originally sought to prosecute appellant on that charge, the trial court changed its focus to the 2702(a)(5) issue, explaining that, "we won't get into the one-punch situation." [14]   N.T. January 7, 1992 at 9.

The legislative intent behind the 1980 legislation, apparently, was to deter a new, brazen brand of violence in schools. The lawmakers were concerned about assaults on teachers by students, about outsiders breaching the schoolhouse walls and attacking students and teachers, and about students coming to school with weaponry inappropriate for legitimate classroom learning. The legislature sought to preserve a feeling of security in teachers from would-be assaulters, in all who learn and work in school from outside wanderers, and in the students and teachers, from armed attacks from the especially violent who resort to knives, nun-chucks, firearms, and other implements "capable of inflicting serious bodily injury." 18 Pa.C.S.A. § 912. To deter this increasingly rampant degree of violence in the schools, and to protect those who seek to be in schools for scholastic purposes, the legislature provided that offenders would be guilty of new crimes or newly-created aggravated offenses. By enacting 18 Pa.C.S.A. § 2702(a)(5), the legislature took what would ordinarily be a simple assault and made it an aggravated assault under specific circumstances.

Whether the statute applies to a student-on-student scuffle is not an issue before us. Nonetheless, we perceive a debatable issue arising from an important statute. The General Assembly may preempt any actual debate by elucidating its expressed intent.

14. The "one-punch situation" which the trial court purposefully avoided was the controversial issue of whether one punch constitutes an aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(1). *Compare Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978) (where Commonwealth did not allege actual serious bodily injury, single punch to nose was insufficient to prove intent element of aggravated assault) *with Commonwealth v. Kibe*, 258 Pa.Super. 353, 392 A.2d 831 (1978) (single strike to face which fractured nose is sufficient evidence of aggravated assault).

Despite reopening its case for judicial notice purposes, the Commonwealth failed to request an adjudication under section 2702(a)(1). The Commonwealth's failure to seek an adjudication of aggravated assault under that theory constituted waiver. Accordingly, we cannot grant the Commonwealth's request for a retrial on charges under section 2702(a)(1). Moreover, the Superior Court is neither empowered nor inclined to "sit as a trial court and try the case *de novo.*" *Commonwealth v. Kittleberger, supra* 420 Pa.Super. at 114, 616 A.2d at 6. Therefore, we cannot determine for the first time on appeal whether appellant has committed an aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) where the Commonwealth did not seek an adjudication thereunder and the trial court did not decide the issue.

## CONCLUSION

The trial court in this case abused its discretion in concluding that Cumberland House is a school. Cumberland House's status as a school was not common knowledge, and neither the Commonwealth, as proponent of judicial notice, nor the court, placed on the record reference to an authoritative governmental publication showing state certification of Cumberland House as a school. 45 Pa.C.S.A. § 506. Accordingly, judicial notice was inappropriate. Moreover, there was no trial evidence to support such a finding.

The trial court further erred in concluding that appellant is guilty of aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(5). There was no evidence that the recipient of appellant's punch was acting in his role as a student.

Finally, the Commonwealth's failure to request an adjudication under 18 Pa.C.S.A. § 2702(a)(1) constituted waiver. Accordingly, we can neither sit as a trial court and determine whether appellant committed aggravated assault pursuant to section 2702(a)(1) nor remand for a retrial.

We must reverse the adjudication of delinquency for aggravated assault, and appellant's record should so reflect our

ruling.[15] However, there was sufficient evidence to find appellant delinquent for simple assault. Accordingly, we reverse the adjudication of delinquency based upon a violation of section 2702(a)(5) and affirm the adjudication of delinquency based upon a violation of section 2701(a)(1) for simple assault.

Order reversed in part and affirmed in part. Jurisdiction relinquished.

CAVANAUGH, J., concurs in the result.

**15.** We note that, although appellant will remain a "juvenile delinquent" due to his commission of a simple assault, appellant's discharge for the aggravated assault charge has significant meaning to appellant. *See In re Smith*, 393 Pa.Super. 39, 47, 573 A.2d 1077, 1080 (1990) *(en banc)* (plurality) (juvenile record may substantially affect one's later treatment in criminal justice system); *Commonwealth v. Felix*, 372 Pa.Super. 145, 539 A.2d 371 (1988) (staggering juvenile record must be considered in sentencing adult); *Commonwealth v. Billett*, 370 Pa.Super. 125, 535 A.2d 1182 (1988) (in sentencing adult, court could consider defendant's prior adjudication of delinquency).