J-S38024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Q. H. , A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Q. H., A MINOR | No. 2043 MDA 2014 |

Appeal from the Dispositional Order dated August 21, 2014
In the Court of Common Pleas of York County
Juvenile Division at No: CP-67-JV-0000275-2014

BEFORE:  WECHT, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED SEPTEMBER 09, 2015**

Appellant Q.H. appeals from the August 21, 2014 dispositional order of the Court of Common Pleas of York County (juvenile court), following his delinquency adjudication for, *inter alia*, driving without a license and fleeing or attempting to elude a police officer.[1] Upon review, we affirm in part and reverse in part.

The facts and procedural history underlying this case are undisputed. On June 9, 2014, a juvenile petition was filed against Appellant, alleging that Appellant committed the foregoing offenses on August 2, 2013.  On August 6, 2014, the juvenile court conducted an adjudicatory hearing, at which the Commonwealth presented the testimony of Officer Ed Pague, Northern York

---

[1] 75 Pa.C.S.A. §§ 1501(a) and 3733(a).

County Regional Police Department. Officer Pague testified that on August 2, 2013, while in a marked police cruiser, he observed two dirt bikes traveling on Route 30 West at a high-rate of speed. N.T. Hearing, 8/6/14, at 4-5. He activated the emergency lights and initiated pursuit. *Id.* Officer Pague testified that the riders eventually proceeded north on Interstate 83 during heavy traffic. *Id.* He relayed that, during the pursuit, the riders neither stopped nor yielded, passing other vehicles in an unsafe manner. *Id.* at 5. Officer Pague testified that eventually the pursuit progressed onto less crowded roads, where one of the riders either crashed or dropped the dirt bike and fled. *Id.* at 6.

As Officer Pague's backup approached from a distance, he continued to chase the other rider, later identified as Appellant. *Id.* Officer Pague testified that he managed to come within "a couple feet" of the other rider and observed that the rider was a white male. *Id.* Specifically, Officer Pague testified that "[t]here were multiple times where I would be either almost beside him or extremely close to him as he would look back to see if it was safe to get in the left lane." *Id.* Officer Pague testified that the pursuit concluded shortly after he allowed the rider onto the left lane to avoid what Officer Pague believed was going to be an impending accident. *Id.* at 7. He testified:

> At that time if I wouldn't have slowed down I think the [rider] would have, one, made a left and hit me or ran into Officer Ryman. So I slowed down. The [rider] then made it into the left lane and proceeded to run the stop sign at Sinking Springs and made a left onto Susquehanna Trail where we had then come into the Stillmeadow Church Parking lot. And that's where he

had crossed a bridge where I was unable to get my vehicle across.

*Id.* at 7. Officer Pague further testified that the pursuit occurred at 8:15 p.m. when it was still light out and spanned a total distance of 4.7 miles. *Id.* He testified that at times he was "within inches" of the rider. *Id.* at 8. In particular, he described that the rider wore an open-faced helmet with a camera mounted on top, wore a tank top exposing an arm tattoo, and a pair of dark shorts. *Id.* Officer Pague emphasized that he "saw [the rider's] face multiple times," because the rider kept looking back at Officer Pague. *Id.*

Officer Pague testified that his investigation of the incident led him to a vacant residence on Woodmont Drive. *Id.* at 15. Based on information posted on the door of the residence, Officer Pague eventually called Appellant's mother, L.H.S. *Id.* Officer Pague testified that L.H.S. told him that she relocated to another residence down the street from Woodmont Drive. While still on the phone with L.H.S., Officer Pague drove to the new residence. *Id.* at 16. Officer Pague testified that, as he was approaching the residence, he observed a white vehicle backing out of the driveway. *Id.* Officer Pague confirmed that it was L.H.S. driving the white vehicle. *Id.* He testified that L.H.S. had a passenger in the vehicle, whom she identified as her son (Appellant). *Id.* When Officer Pague observed her son exit the vehicle, Officer Pague realized he "had the same tattoo that was on the driver of the motorcycle that evening." *Id.*

Upon seeing Appellant, Officer Pague testified that he "asked him right away who "the other person that you were riding the motorcycle with" was. *Id.* According to Officer Pague's testimony, Appellant replied he "didn't know." *Id.* at 16-17. On cross-examination, Officer Pague acknowledged that he did not recall any specifics about the arm tattoo. *Id.* at 20.

At the hearing, Appellant challenged Officer Pague's testimony about how Officer Pague ascertained Appellant's identity, arguing that the Commonwealth failed to respond to Appellant's discovery request about the manner in which Officer Pague identified Appellant. The juvenile court sustained the objection.

On August 21, 2014, the juvenile court adjudicated Appellant delinquent of, *inter alia*, fleeing or attempting to elude a police officer and driving without a license. Following the juvenile court's denial of Appellant's post-dispositional motion, Appellant timely appealed to this Court. Appellant filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, raising two assertions of error:

> [1.] Whether Appellant's adjudication for driving without a license was against the sufficiency of the evidence as there was no evidence presented at the denial hearing to support adjudication for driving without a license?

> [2.] Whether Appellant's adjudication on the fleeing and eluding charge was against the weight of the evidence as the officers [sic] testimony and identification were not reliable?

Appellant's Rule 1925(b) Statement. In response, the juvenile court issued a Pa.R.A.P. 1925(a) opinion, incorporating the reasons set forth in its August

- 4 -

6, 2014 order. With respect to the first assertion of error, the juvenile court acknowledged that "there was no evidence presented at the fact finding hearing to support adjudication for driving without a license." Juvenile Court Rule 1925(a) Opinion, 1/5/15, at 2. The court, however, noted that it "had personal knowledge of [Appellant's] date of birth and the impossibility of [Appellant] having a valid driver's license" at the time of the incident. *Id.* at n.1. As for the second assertion of error, the juvenile court concluded it did not abuse its discretion in rejecting Appellant's weight of the evidence argument.

On appeal, Appellant repeats the same two assertions of error. Our standard of review of dispositional orders is well-settled: "The Juvenile Act grants broad discretion to the court when determining an appropriate disposition. We will not disturb a disposition absent a manifest abuse of discretion." *In the Interest of R.D.*, 44 A.3d 657, 664 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012) (quoting *In the Interest of R.D.R.*, 876 A.2d 1009, 1013 (Pa. Super. 2005)). An abuse of discretion "requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Commonwealth v. Rodriguez*, 81 A.3d 103, 106 (Pa. Super. 2013) (quotation omitted).

We now turn to Appellant's first assertion of error. Appellant argues that the evidence was insufficient to sustain his conviction for driving without a license.[2] We agree. Instantly, the Commonwealth admits that the juvenile court erred in adjudicating Appellant delinquent for driving without a license, because the adjudication was not supported by sufficient evidence. Appellee's Brief at 13. In fact, as noted earlier, the juvenile court also acknowledged that the Commonwealth failed to present sufficient evidence to sustain Appellant's adjudication for driving without a license. Accordingly, Appellant's delinquency adjudication for driving without a license was in error.[3]

_____

[2] We are mindful that:

> [i]n reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt. The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. As an appellate court, we must review the entire record and all evidence actually received. The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*In re C.R.*, 113 A.3d 328, 333-34 (Pa. Super. 2015) (citation and quotation marks omitted).

[3] To the extent the juvenile court suggests it may take judicial notice of Appellant's date of birth because of its familiarity with Appellant, we disagree. Here, the juvenile court for the first time took judicial notice of Appellant's date of birth **at the post-dispositional motion hearing**. *See*
*(Footnote Continued Next Page)*

Appellant next argues that his delinquency adjudication was contrary to the weight of the evidence because Officer Pague's testimony was not credible. In support of this argument, Appellant points out that Officer Pague's testimony was not credible because Officer Pague did not remember any details about the tattoo on Appellant's arm. Appellant's Brief at 13.

"A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *In re J.B.*, 106 A.3d 76, 95 (Pa. 2014). Thus, we may only reverse the juvenile court's adjudication of delinquency if it is so contrary to the evidence as to shock one's sense of justice. *In re J.M.*, 89 A.3d 688, 692 (Pa. Super. 2014), *appeal denied*, 102 A.3d 986 (Pa. 2014) (citation omitted). Moreover, where the court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. *Id.* Rather, appellate review is limited to whether the juvenile court palpably abused its discretion in ruling on the weight claim. *Id.* Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings. Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve. *Id.*

*(Footnote Continued)* ─────────────────

*In Interest of D.S.*, 622 A.2d 954, 958 (Pa. Super. 1993) (A party opposing judicial notice must be provided an opportunity for rebuttal).

Here, Appellant essentially invites us to re-evaluate the juvenile court's credibility determination. We, however, decline to do so. As noted above, we do not disturb the juvenile court's credibility determination by which we are bound. ***See Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (2009) ("A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion."). Thus, based on our review of the entire record, as recited above, we do not conclude the juvenile court abused its discretion in denying Appellant a new trial.

Dispositional order affirmed in part and reversed in part.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2015