J-A18025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HAROLD MICHAEL FRANKS | : | No. 179 WDA 2019 |

Appeal from the Order Entered January 17, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0005049-2017

BEFORE: BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.: **FILED OCTOBER 16, 2019**

The Commonwealth appeals from the order denying its motion *in limine* regarding the admissibility of hearsay and other bad acts evidence in its prosecution of Appellee Harold Michael Franks.[1] The Commonwealth argues that the evidence at issue is admissible under the applicable Pennsylvania Rules of Evidence and relevant caselaw. The Commonwealth also argues that the trial court erred in taking judicial notice of certain facts about Appellee's relationship with the complainant. We reverse in part and remand.

The relevant facts and procedural history of this appeal are as follows. On October 29, 2017, Greensburg City Police Officer Jason Fidazzo was on duty, working an overnight shift. At approximately 3:00 a.m., Officer Fidazzo

---

[1] The Commonwealth certified that the order terminated or substantially handicapped the prosecution of this matter at the time it filed its notice of appeal from this interlocutory order. *See* Notice of Appeal, 1/28/19; Pa.R.A.P. 311(d).

exited the police station to go to his patrol car in the parking lot. At the same time, a Honda CRV drove into the parking lot and pulled up to the steps where the officer was standing.

Officer Fidazzo approached the vehicle, shined a light into the passenger compartment, and observed Melissa Franks (Complainant), who was the driver and sole occupant. Complainant was "[v]isibly upset, shaking, [and] had . . . fresh blood on her face." N.T. Pretrial Hr'g, 8/27/18, at 9. Officer Fidazzo asked Complainant what had happened, but "[s]he was breathing heavily and was unable to tell [him] exactly what was going on at that time." *Id.*

Officer Fidazzo noticed that Complainant was covering herself with a jacket, and it appeared that she was not wearing clothing underneath the jacket. Officer Fidazzo helped Complainant out of her car, and he escorted her into an interview room inside the police station "so she could be away from everybody else." *Id.* at 10. Inside the police station, Officer Fidazzo observed "fresh injuries on her face," and he called paramedics for assistance. *Id.*

Approximately ten minutes after Complainant entered the police station, Officer Fidazzo again asked her about what had happened. Complainant said that she got into an argument with Appellee, her husband, and she provided her Hempfield Township address to Officer Fidazzo. Officer Fidazzo recognized that the address was not located within his jurisdiction, and he called the Pennsylvania State Police (PSP) to commence an investigation.

Regarding Complainant's statements, Officer Fidazzo testified:

> She indicated that she was assaulted by her husband and that assault turned into some type of sexual assault in nature. She indicated that he forced her to perform oral sex on him.

> At that time, I kind of stopped her. Being that she was so upset, she was hard to understand. I didn't want to push the issue further being that I didn't personally need that information and that she would have to repeat it all again in a little bit anyway.

*Id.* at 11.

Within minutes, PSP Troopers Kalen Gerhard and Brandon Boyd arrived and saw that Complainant was "visibly shaking, distraught, crying." *Id.* at 20. The troopers also observed that Complainant's eye was "swollen and red," her lip was "cut and bloody," her face was "bruised and red," and she had "visible scratches and marks on both sides of her neck." Aff. of Probable Cause, 10/30/17.[2]

Complainant informed the troopers that she and Appellee had been at a bar, and they were "fighting a lot because [Appellee] physically abuses [Complainant]." *Id.* After returning home, Appellee began to strike Complainant in the head and face. Complainant alleged that Appellee threw her onto the bed and forcibly penetrated her vagina with his penis. Despite Complainant's protests, Appellee continued the assault. Appellee pulled Complainant's hair and forced her to perform oral sex on him. Complainant

_____

[2] Although Troopers Gerhard and Boyd responded to the dispatch, another PSP trooper, Joseph Lauricia, completed the affidavit of probable cause.

also claimed that Appellee held her by the neck, choking her when she attempted to get away.

Complainant eventually escaped and ran to a neighbor's house for aid. When the neighbor did not answer the door, Complainant drove to the Greensburg City police station.

On January 2, 2018, the Commonwealth filed a criminal information charging Appellee with rape, sexual assault, simple assault, and related offenses.[3]  On February 27, 2018, the Commonwealth filed notice of its intent to introduce evidence of prior bad acts, pursuant to Pa.R.E. 404(b). Specifically, the Commonwealth emphasized other episodes of domestic violence that occurred prior to the incident at issue:

> On 7/[2]8/17, [Complainant] requested a [protection from abuse (PFA) order] alleging that [Appellee] threatened to end her, that he choked her, pushed her, and constantly screams at her and that she believes he will kill her.  That was dismissed on 8/22/17.
>
> On 8/14/17, [Appellee] was charged with simple assault, strangulation, and terroristic threats after [Complainant] reported that [Appellee] grabbed her neck, put his hand over her mouth and threatened to break her neck.  [Complainant] refused to cooperate with prosecution and the case was dismissed at the preliminary hearing on 8/24/17.

Notice of Intent to Introduce Rule 404(b) Evid., 2/27/18, at 2 (unpaginated).

On March 5, 2018, the Commonwealth filed a motion *in limine* seeking to admit, among other things, Complainant's out-of-court statements to Officer Fidazzo.  The Commonwealth argued that Complainant's statements

---

[3] 18 Pa.C.S. §§ 3121(a)(1), 3124.1, and 2701(a)(1), respectively.

were admissible under the "prompt complaint" and "excited utterance" exceptions to the hearsay rule.

Appellee filed his own motion *in limine* on April 5, 2018. Appellee noted that Complainant had appeared at a prior hearing for this matter, testifying that she was under the influence of alcohol when she made her statements to Officer Fidazzo and the PSP troopers. *See* Mot., 4/5/18, at ¶ 20. Appellee also noted that if the Commonwealth called Complainant as a witness at trial, "she will state that the events did NOT occur as she stated, particularly the rape."[4] *Id.* at ¶ 27.

Appellee acknowledged that the Commonwealth intended to introduce Complainant's statements through testimony from other witnesses, but he labeled the proposed testimony as "classic hearsay." *Id.* at ¶ 31. Appellee argued that Complainant's statements "should not be admitted as they were not given with any indicia of reliability as they were given at a time when [Complainant] was under the influence of drugs and alcohol." *Id.* at ¶ 33.

The trial court conducted two hearings on the parties' various evidentiary claims. At the second hearing, conducted on August 27, 2018,

_____

[4] By way of background, the trial court conducted a hearing on Appellee's unrelated petition to reinstate bond on March 9, 2018. At that time, Complainant testified that the alleged crimes did not occur, and she was under the influence of alcohol and prescription medication on the night in question. *See* N.T. Bond Hr'g, 3/9/18, at 25. Further, Complainant testified that she and Appellee engage in consensual sexual activity that involves physical striking. *Id.* at 33.

the Commonwealth noted that it had filed another criminal complaint against Appellee for a subsequent incident of domestic violence against Complainant on June 22, 2018.[5]  Consequently, the Commonwealth amended its motion *in limine* to request admission of this subsequent bad act.  ***See*** N.T. Pretrial Hr'g at 67.

By opinion and order entered January 17, 2019, the trial court denied the Commonwealth's request to admit Complainant's statements to Officer Fidazzo pursuant to the excited utterance exception.  The trial court also ruled that the Rule 404(b) evidence was inadmissible.  Regarding the Commonwealth's arguments about the prompt complaint exception, the trial court concluded that its applicability is "contingent upon the declarant-witness testifying at trial and, as such, [is] not ripe for review."  Trial Ct. Op., 1/17/19, at 1 n.2.

Regarding the Rule 404(b) evidence, the trial court found it inadmissible because Complainant's "recanted prior testimonial hearsay statements are not substantial evidence that the [other] bad acts . . . occurred."  ***Id.*** at 3.  To support its ruling, the trial court cited Complainant's prior testimony that she and Appellee "engage in consensual sex that involves physical striking."  ***Id.*** at 1 n.1.  In light of this testimony, the trial court took "judicial notice of this

---

[5] The criminal complaint and affidavit of probable cause for the June 22, 2018 offenses appear in the certified record as an attachment to the Commonwealth's July 2, 2018 motion to revoke bond.  Those documents indicate that Appellee was intoxicated and started screaming at Complainant about their marital problems.  Appellee's behavior escalated to the point where he grabbed Complainant by the throat and threatened to kill her.

discrete and undisputed fact for consideration of the parties' motions *in limine*." ***Id.***

The Commonwealth timely filed a notice of appeal on January 28, 2019. The trial court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, which the Commonwealth timely filed on February 15, 2019. The trial court subsequently filed a responsive opinion.

The Commonwealth now raises five issues for our review:

[1]. Whether the trial court erred by excluding evidence consisting of excited utterances where the court classified them as testimonial in response to official police questioning, yet [Complainant's] statements were made while she was crying, upset, bleeding, unclothed and asking for help, and were not offered in formal structured police interrogation.

[2]. Whether the trial court erred in not considering admissibility of [Complainant's] initial report of sexual assault as prompt complaint by indicating that admissibility is contingent upon [Complainant] testifying at trial, where evidence of prompt complaint of sexual assault is competent evidence that is properly admitted when stated for the included purpose of establishing that a complaint was made, and to identify the occurrence complained of with the offense charged, and where there is no indication that [Complainant] will not testify at trial.

[3]. Whether the trial court erred in excluding evidence of other bad acts that are relevant to show *res gestae* and are necessary to the Commonwealth's case, without properly balancing the probative value against the potential for prejudice including the ability to exclude improper prejudice through cautionary instructions.

[4]. Whether the [trial] court improperly denied the Commonwealth's admission of [Pa.R.E.] 404(b) evidence and improperly considered credibility of [Complainant's] recantation statements made in this case in determining other bad acts

- 7 -

evidence inadmissible when credibility is an issue for the jury, and the prior PFA order is admissible by certified copy and evidence of abuse between defendant and victim is generally admissible in a domestic violence case, (*See Commonwealth v. Drumheller*, 808 A.2d 893 (Pa. 2002)), and can be shown despite victim recantation.

[5]. Whether the trial court erred in taking judicial notice that [Complainant] and [Appellee] regularly engage in consensual sex involving physical striking, when the fact is neither generally known in the community nor readily and accurately determinable from accurate sources in the context of this domestic violence case and because judicial notice of a fact constitutes evidence, the Commonwealth then becomes obligated to rebut the inference and credibility is an issue for the jury, and the question for the jury is whether assault crimes occurred.

Commonwealth's Brief at 4-5.

In its first issue, the Commonwealth emphasizes that Complainant "was unclothed, visibly upset, shaking and bloody" when she "drove to a police station and told [Officer Fidazzo] that she needed help." *Id.* at 16. The Commonwealth asserts that Officer Fidazzo "did not sit in the room with [Complainant] or interrogate" her, but he did ask what happened. *Id.* The Commonwealth contends Complainant's response was not "in narrative form," and she "had difficulty talking about the event." *Id.* at 17. Under these circumstances, the Commonwealth maintains that Complainant's statements qualify as excited utterances, even if Complainant made the statements in response to the officer's question. *Id.* (citations omitted).

The Commonwealth acknowledges the trial court's determination that Complainant's statements appeared less spontaneous because they occurred some time after the assault. *Id.* at 18. The Commonwealth insists, however,

that Complainant "left her home as fast as she could," and the she was still "distraught" at the time of her interaction with the officer. *Id.* The Commonwealth concludes that the trial court erred in excluding Complainant's out-of-court statements to Officer Fidazzo. *Id.* at 24.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court . . . [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court over-rides [sic] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Belknap***, 105 A.3d 7, 9-10 (Pa. Super. 2014) (citations omitted and some formatting altered).

"Relevance is the threshold for admissibility of evidence." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (citation omitted).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa. Super. 2019) (citation omitted and some formatting altered).

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa. Super. 2006) (citation omitted).

"Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Id.* (citation omitted). Pennsylvania Rule of Evidence 803(2) provides one such exception, for excited utterances, as follows:

> A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.

Pa.R.E. 803(2); *see also Commonwealth v. Murray*, 83 A.3d 137, 157-58 (Pa. 2013) (reiterating that "it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable" (citation omitted)).

The following factors guide this Court in evaluating whether an out-of-court statement is admissible pursuant to the excited utterance exception:

> 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. **Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance.**

*Commonwealth v. Keys*, 814 A.2d 1256, 1258 (Pa. Super. 2003) (citations omitted, some formatting altered, and emphasis in original); *see also Commonwealth v. Crosby*, 791 A.2d 366, 370 (Pa. Super. 2002) (stating that "[t]he excited utterance exception includes statements made in response to questioning as well as those made shortly after the event. . . ." (citation omitted)).

"There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance." Pa.R.E. 803(2) cmt.

> The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit. . . . Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." . . . The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

- 11 -

*Id.* (citation omitted).

Instantly, Complainant informed Officer Fidazzo that Appellee physically and sexually assaulted her. The assault amounts to a "startling event" for purposes of the excited utterance exception. **See Commonwealth v. Gray**, 867 A.2d 560, 571 (Pa. Super. 2005) (holding that a witness who watched the assault of her mother viewed a startling event for purposes of the excited utterance exception).

Regarding the lapse in time between the assault and Complainant's statements, Officer Fidazzo observed that Complainant's injuries were still fresh when she arrived at the police station. **See** N.T. Pretrial Hr'g at 9-10. Further, Complainant stated that she went to a neighbor's house seeking aid and that no one answered the door, then she immediately proceeded to the police station. **See** Aff. of Probable Cause, 10/30/17.

Significantly, any lapse in time between the startling event and the statements did not dissipate the "nervous excitement" Complainant felt after the assault. **See** Pa.R.E. 803(2) cmt. Throughout his interaction with Complainant, Officer Fidazzo described her as upset, shaking, crying, breathing heavily, and difficult to understand. **See** N.T. Pretrial Hr'g at 9-15. This evidence of Complainant's demeanor established that she continued to experience overpowering emotion caused by the startling event at the time she made the statements. **See Commonwealth v. Barnyak**, 639 A.2d 40, 43-44 (Pa. Super. 1994) (explaining that statements made by a shooting victim at the hospital shortly after the incident qualified as excited utterances;

medical personnel who treated the victim testified that she was upset when she came to the emergency room, and she was still upset when she left approximately two hours later).

We also note that the trial court found Complainant's statements to be "testimonial" due to "calculated and paused questioning" by the police. *See* Trial Ct. Op., 3/29/19, at 4. Officer Fidazzo testified, however, that he made Complainant stop talking and he left the interview room after learning about the assault. *See* N.T. Pretrial Hr'g at 10, 11. Officer Fidazzo testified: "I didn't interview her for her sake because she was so upset at that time, and I knew it would be hard get anything valuable out of her. I got only what I needed for that exact time." *Id.* at 16.

This testimony reveals that Complainant's statements were not the result of calculated police interviewing techniques. Rather, Officer Fidazzo asked Complainant about what happened to her. He immediately stopped all questioning after receiving her answer alleging that Appellee assaulted her.

Under these circumstances, the record demonstrates that Complainant's out-of-court statements to Officer Fidazzo qualified as excited utterances. *See* Pa.R.E. 803(2); *Keys*, 814 A.2d at 1258. Accordingly, the trial court abused its discretion in denying the Commonwealth's motion *in limine* on this basis, and we reverse the trial court's order to the extent it found that Complainant's statements to Officer Fidazzo were inadmissible. *See* *Belknap*, 105 A.3d at 9-10.

In its second issue, the Commonwealth contends that "[e]vidence of a prompt complaint of sexual assault is competent evidence properly admitted when limited to establish that a complaint was made and also to identify the occurrence complained of with the offense charged." Commonwealth's Brief at 25. The Commonwealth asserts that "[t]imeliness of complaint has been deemed relevant and admissible generally to: explain inconsistency or silence; to corroborate similar statements; or as a *res gestae* declaration." *Id.* The Commonwealth argues that Complainant's initial contact with Officer Fidazzo is admissible as a prompt complaint, regardless of whether Complainant "testifies about the details of the event as she originally reported them." *Id.* at 27. The Commonwealth concludes that the trial court erred by not determining whether it should admit Complainant's statements to Officer Fidazzo as a prompt complaint of the sexual assault. *Id.*

> Pennsylvania Rule of Evidence 613 provides, in pertinent, as follows:

> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of . . . fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose. . . .

Pa.R.E. 613(c)(1).

> In cases involving sexual assault, Rule 613 authorizes the Commonwealth to present evidence in its case-in-chief of a prompt complaint by the victim because [the] alleged victim's testimony is automatically vulnerable to attack by the defendant as recent fabrication in the absence of evidence of hue and cry on her part. Evidence of a complaint of a sexual assault is competent

evidence, properly admitted when limited to establish that a complaint was made and also to identify the occurrence complained of with the offense charged.

**Commonwealth v. Bryson**, 860 A.2d 1101, 1104 (Pa. Super. 2004) (*en banc*) (citations omitted and some formatting altered).

Instantly, the trial court declined to rule on whether Complainant's out-of-court statements are admissible under the prompt complaint exception, noting that the exception is contingent upon the declarant testifying at trial. In light of the relevant caselaw, the trial court did not err in deferring its ruling, and the Commonwealth is not entitled to relief on its second claim. **See Commonwealth v. Freeman**, 441 A.2d 1327, 1332 n.4 (Pa. Super. 1982) (stating that "[i]f the alleged victim does not testify that she was raped, then evidence of her fresh complaints cannot corroborate such testimony and thus is not admissible under this special evidential rule").[6]

In its third and fourth issues, the Commonwealth contends that it sought admission of Appellee's other bad acts to demonstrate a "*res gestae* pattern of domestic violence, absence of accident, common plan, intent, and to rebut consent, not to show criminal character." Commonwealth's Brief at 29. The Commonwealth maintains that the probative value of the other bad acts evidence outweighs its prejudicial effect, and the trial court should not prohibit the evidence merely because it is harmful to Appellee. **Id.** at 30.

---

[6] We may rely on caselaw that predates the adoption of the Pennsylvania Rules of Evidence so long as it is consistent with the current rules. **See Commonwealth v. Aikens**, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

The Commonwealth acknowledges the trial court's finding that Appellee's other bad acts were unsupported by "substantial evidence" in light of Complainant's recantation. *Id.* at 33. The Commonwealth insists, however, that substantial evidence supported the conclusion that Appellee committed the other bad acts where (1) Complainant provided oral and written statements about the acts; (2) officers observed Complainant's injuries and had personal knowledge of the charges against Appellee; and (3) the PFA against Appellee is a self-authenticating document. *Id.* at 34. The Commonwealth concludes that the trial court erred in excluding evidence of Appellee's other bad acts, which should be admitted pursuant to Rule 404(b). *Id.* at 40.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of a crime, wrong, or another act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

"An exception to Rule 404(b) exists that permits the admission of evidence where it became part of the history of the case and formed part of the natural development of facts. This exception is commonly referred to as

the *res gestae* exception." ***Commonwealth v. Ivy***, 146 A.3d 241, 251 (Pa.

Super. 2016) (citations omitted).

> The *res gestae* exception to the general proscription against evidence of other crimes, is also known as the complete story rationale, *i.e.*, evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.
>
> Where the *res gestae* exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact. In conducting this balancing test, courts must consider factors such as the strength of the other crimes evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and the degree to which the evidence probably will rouse the jury to overmastering hostility.
>
> Our Supreme Court has stated that PFA petitions are admissible and relevant to demonstrate the continual nature of abuse and to show the defendant's motive, malice, intent, and ill-will toward the victim.

***Commonwealth v. Yocolano***, 169 A.3d 47, 55 (Pa. Super. 2017) (citations

omitted and some formatting altered).

"Evidence of prior bad acts may [also] be admitted to establish the

'existence of a common scheme, [establish] an individual's motive, intent, or

plan, or [identify] a criminal defendant as the perpetrator of the offense

charged.'" ***Ivy***, 146 A.3d at 253 (citation omitted). "Two conditions must be

satisfied to admit prior-crimes evidence to establish a common scheme: (1)

the probative value of the evidence must outweigh its potential for prejudice

against the defendant and (2) a comparison of the crimes must establish a

logical connection between them." ***Id.*** (citation and quotation marks omitted).

Instantly, the Commonwealth sought to introduce evidence of (1) Complainant's July 28, 2017 PFA petition against Appellee; (2) the charges stemming from Appellee's August 14, 2017 domestic violence incident; and (3) the charges stemming from Appellee's June 27, 2018 domestic violence incident. Each piece of evidence included allegations of verbal abuse and strangulation. Here, the probative value of the evidence outweighs its potential for unfair prejudice, because the Commonwealth's evidence fulfills the *res gestae* exception by seeking to "complete the story of the crime by proving its immediate context of happenings near in time and place." ***See Yocolano***, 169 A.3d at 55; ***see also Ivy***, 146 A.3d at 252 (noting that "[e]vidence of prior abuse between a defendant and an abused victim is generally admissible to establish motive, intent, malice, or ill-will").

Moreover, each piece of evidence shares certain similarities, including allegations of verbal abuse and strangulation perpetrated by Appellee against Complainant during a period in which they experienced severe marital distress. Pursuant to the relevant caselaw, the trial court should have admitted the Commonwealth's evidence under the common plan, scheme, or design exception to Rule 404(b). ***See Ivy***, 146 A.3d at 253; ***see also Aikens***, 990 A.2d at 1185-86 (holding that the facts of a prior assault were "markedly similar" to the present case such that evidence of the prior assault was

admissible under the common scheme, design, or plan exception, and the probative value of the evidence outweighed its prejudicial impact).

We acknowledge the trial court's conclusion that "[t]he weakness of the [other] bad acts evidence . . . weighed heavily in [its] analysis when balanced against the potential for it to unfairly prejudice [Appellee]." Trial Ct. Op., 3/29/19, at 9. Nevertheless, the trial court's concern goes to the weight of the evidence and not its admissibility. *See Commonwealth v. Sherwood*, 982 A.2d 483, 498 (Pa. 2009) (rejecting the appellant's argument that the trial court should not have admitted prior bad acts evidence through the testimony of "an unreliable witness who had a motive to accuse" the appellant of abusing the victim, because such a complaint goes to the weight of the evidence and not its admissibility).[7] Accordingly, the trial court abused its discretion by prohibiting the Commonwealth from presenting evidence of Appellee's prior bad acts. *See Belknap*, 105 A.3d at 9-10.

In its fifth issue, the Commonwealth asserts that the trial court took judicial notice of the fact that Complainant and Appellee regularly engage in consensual sex that involves physical striking. Commonwealth's Brief at 41.

---

[7] The trial court cited *Commonwealth v. Donohue*, 549 A.2d 121, 127 (Pa. 1988) (quoting McCormick, On Evidence, § 190, 451-52 (2d Ed. 1972)), for the proposition that "for the jury to be entitled to consider [other bad acts] there must . . . be substantial evidence of these facts. . . . And it is believed that before the evidence is admitted at all, this factor of the substantial or unconvincing quality of the proof should be weighed in the balance." We note that our Supreme Court decided *Donohue* before the adoption of, and revisions to, Rule 404. Further, *Donohue* is distinguishable, because the Court specifically addressed evidence of a prior criminal incident admitted under the "absence of accident" exception. *See Donohue*, 549 A.2d at 127.

The Commonwealth contends that the trial court based its judicial notice on Complainant's testimony at the pretrial hearing, despite the fact that other evidence contradicts Complainant's testimony. *Id.* The Commonwealth argues that "[a] judicially noticed fact must not be subject to dispute in that it is generally known or capable of accurate determination by sources whose accuracy cannot be questioned." *Id.* The Commonwealth concludes that the trial court erred by taking judicial notice here, because "[t]he sexual practices of [Appellee] and [Complainant] are not generally known . . . or capable of accurate determination by resort[ing] to sources whose accuracy cannot reasonably be called into question." *Id.* at 42.

"The court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b)(1)-(2).

> A court may take judicial notice of an indisputable adjudicative fact. A fact is indisputable if it is so well established as to be a matter of common knowledge. Judicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proved is so well known that evidence in support thereof is unnecessary.
>
> Judicial notice allows the trial court to accept into evidence indisputable facts to avoid the formality of introducing evidence to prove an incontestable issue. However, the facts must be of a matter of common knowledge and derived from reliable sources whose accuracy cannot reasonably be questioned.

*Commonwealth v. Brown*, 839 A.2d 433, 435 (Pa. Super. 2003) (citations and quotation marks omitted); *see also In Interest of D.S.*, 622 A.2d 954,

957 (Pa. Super. 1993) (stating that "a court cannot take judicial notice of a disputed question of fact").

Instantly, the trial court considered Complainant's testimony from the pretrial hearing and took judicial notice of her statement that she and Appellee engage in consensual sex that involves physical striking. Regardless of what information Complainant offered about her relationship with Appellee, her testimony was not so reliable that its "accuracy cannot reasonably be questioned." **See Brown**, 839 A.2d at 435. We emphasize that Complainant's statements to the police detailing physical and sexual abuse, followed by her recantation of those statements, establish that the nature of her sexual relationship with Appellee is a disputed question of fact to be resolved at trial. **See D.S.**, 622 A.2d at 957. Therefore, the trial court abused its discretion by taking judicial notice of the nature of Complainant's sexual relationship with Appellee. **See Belknap**, 105 A.3d at 9-10.

Based upon the foregoing, we reverse that portion of the January 17, 2019 order excluding Complainant's hearsay statements pursuant to the excited utterance exception of Rule 803(2). We also reverse that portion of the order excluding evidence of Appellee's other bad acts. We remand the matter to Court of Common Pleas so that the case may proceed.[8]

---

[8] On July 22, 2019, the Commonwealth filed an application to amend its brief, seeking to correct to typographical errors in the "statement of the case" section. We grant the Commonwealth's application.

Order reversed in part; case remanded. Commonwealth's application to amend its brief granted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2019