J-S25014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEKEMA GENTLES | : | |
| | : | |
| Appellant | : | No. 539 EDA 2021 |

Appeal from the Judgment of Sentence Entered November 6, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-MD-0001240-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    Filed: October 7, 2021

Appellant, Sekema Gentles, appeals from the judgment of sentence of three months' probation and a $300 fine, imposed after he was convicted of indirect criminal contempt (ICC) for violating a Protection from Abuse (PFA) order sought by his wife, Tiffany Flores, for the protection of herself and the three children she shares with Appellant.  On appeal, Appellant challenges the admission of the PFA order at the ICC hearing, as well as the sufficiency of the evidence to support his conviction of ICC.  After careful review, we affirm.

The trial court summarized the procedural history of this case, as follows:

> On January 17, 2020, [Flores] filed a … [PFA petition] against her husband, [Appellant]….  In her January 17, 2020 PFA petition, Flores indicated that she [was] seeking a PFA [order] against

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] on behalf of herself and the parties['] three (3) minor children….

On January 17, 2020, a temporary PFA order was entered by the Honorable Henry S. Hilles III….  In addition, on January 17, 2020 (docketed on January 21, 2020), Judge Hilles entered an order appointing Eileen A. Schaeffer, Esquire, legal counsel for the minor children.

Following a hearing on February 11, 2020, a [f]inal PFA order was entered by Judge Hilles on behalf of Flores and the three (3) minor children and against [Appellant].

\*\*\*

On February 20, 2020 (docketed on February 25, 2020), following a proceeding on the record on [Flores'] February 12, 2020 Emergency Petition for Custody, the Honorable Daniel J. Clifford ("Judge Clifford") entered an order stating, *inter alia*, at paragraph seven (7) as follows[,] with regard to custody exchanges between the parties of the minor children:

> a. [Appellant] shall not exit his vehicle and [Flores] shall not exit her residence[;]
>
> b. [T]here is to be **no** verbal communication between any of the adults during the custody exchanges; and
>
> c. Any pertinent information pertaining to the child can be provided via text or email message (*i.e.*[,] health, diet, school work, activities, etc.).

Furthermore, paragraph eight (8) of Judge Clifford's February 20, 2020 order stated that [Appellant] shall have telephone contact with the children on his non-custodial days at 7:00 p.m.

Finally, paragraph nine (9) of Judge Clifford's February 20, 2020 order stated the following modifications to the parties['] February 11, 2020 PFA Order:

> a. Section 3 is modified such that [Appellant] may text [Flores] only with respect to scheduling issues;
>
> b. Section 5 is modified such that [Appellant] may have contact with the minor children as set forth herein.

On February 26, 2020 (docketed on February 27, 2020), upon consideration of [Flores'] February 24, 2020 Emergency Petition

for Contempt of Custody, and following a review by Judge Clifford of the transcript from the parties' February 11, 2020 [PFA] Hearing, Judge Clifford entered an order stating, *inter alia*, that sections 3, 4, and 5 of the February 11, 2020 PFA [o]rder … were modified such that [Appellant] may have contact with the minor children.[1]

On October 22, 2020, an [ICC] Notice was filed on the docket and a hearing date was set for November 6, 2020[,] before the undersigned.

On November 6, 2020, the parties appeared for an [ICC] hearing….

Trial Court Opinion (TCO), 4/9/21, at 1-3 (footnote omitted; emphasis in original).

The court summarized Flores' testimony at the ICC hearing, as follows:

Flores testified that [Appellant] informed her prior to October 13, 2020[,] that he was planning to be out[]of[]town during his next custody weekend with the minor children. Flores testified that she texted [Appellant] on October 13, 2020[,] and asked him if he intended to pick up the minor children early since he had previously stated to her that he would be out[]of[]town during his regularly scheduled next custody weekend. Flores testified that [Appellant] texted her back and said[,] "No."

Flores testified that despite [Appellant's] text indicating that he would not be picking up the minor children, [Appellant] came to her home … on October 13, 2020[,] in violation of the final PFA order and subsequent related custody orders[,] which permitted [Appellant] to be with the minor children[,] but restricted him from interacting and communicating with Flores except through electronic means with regard to custody[-]related matters as ordered by the court.

Flores testified that when [Appellant] arrived at her home…, [Appellant] banged on her back door and broke the glass on the door. Flores testified that … [Appellant] … accused her of taking items from the family's Chevy Tahoe[,] which was parked on the

_____

[1] The orders entered on February 20, 2020 and February 26, 2020, will collectively be referred to herein as "custody orders."

street outside of Flores' home. While Flores contend[ed] that she did not take any of [Appellant's] personal belongings from the vehicle, [Appellant] insisted that she did and began wrestling with her and grabbed her cell phone from her hands before leaving the property. According to Flores, [Appellant] later returned to the property[,] but still refused to return the cell phone to Flores.

*Id.* at 10. Ultimately, the police were called to the scene and Appellant was arrested.

Appellant's version of the events of October 13, 2020 differed from Flores' account. *See* N.T. Hearing, 11/6/20, at 27-41 (Appellant's testifying that he went to Flores' home to pick up his children and, while he was waiting, Flores took property from Appellant and instigated a physical tussle with him, and that the glass in Flores' door had been broken for years). However, the court found Appellant's testimony incredible. *See* TCO at 13. Instead, the court credited Flores' testimony and found Appellant guilty of ICC. The court sentenced him that same day to the term of probation and fine set forth *supra*.

Appellant's filed a timely post-sentence motion, which was ultimately denied. He thereafter filed a timely notice of appeal, and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant states the following issues for our review:

I. Did the [trial] court err in permitting the admission of the PFA order underlying [Appellant's] charges where the Commonwealth failed to lay the proper foundation for its admission as a self-authenticating document under Pa.R.E. 902?

II. Was the evidence insufficient to sustain [Appellant's] conviction in that the Commonwealth failed to establish the following elements needed for indirect criminal contempt:

a. The Commonwealth failed to establish the existence of an underlying PFA order since it failed to establish the elements needed for admission of the PFA as a self-authenticating document under Pa.R.E. 902.

b. The Commonwealth failed to establish that the PFA order was sufficiently definite, clear, and specific to [Appellant,] as to leave no doubt of the conduct prohibited since a series of custody orders that followed the PFA permitted [Appellant] to go to the property to pick up the children and [Appellant] went to the property on the evening in question in response to a text by [Flores] asking him to come to the property to pick up the children.

c. The Commonwealth failed to establish [Appellant] had notice of the order since no evidence was adduced that [Appellant] was served with the order after it was issued by the court.

d. The Commonwealth failed to establish that [Appellant] acted with wrongful intent since the evidence demonstrated that [Appellant] went to the property after receiving a text from [Flores] asking him to pick up their children and that once there, [Appellant] was merely trying to obtain his own personal items that had been stolen by [Flores].

Appellant's Brief at 4-5.

Appellant first challenges the court's admission of the PFA order.

The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. **Commonwealth v. Hunzer**, 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. **Id.**

**Commonwealth v. Young**, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted).

- 5 -

Here, the PFA order was entered into evidence at the hearing as follows:

[The Commonwealth]: Your Honor, at this point, I would ask the [c]ourt to take judicial notice of the Final … [PFA] Order in this case.

THE COURT: All right. I will do so.

[Defense Counsel]: I would object, Your Honor. I'm not sure if there is an official self-authenticating version that I've not been provided, but the version I have is not sealed and I don't think I have any official self-authenticating document that's a version of the PFA.

[The Commonwealth]: Your Honor, given the [Covid-19] pandemic, we've been having issues getting into the Prothonotary to have [the PFA order] sealed and stamped…. So[,] I would ask that -- I mean --

THE COURT: Well, I'm going to take notice because my court clerk, who has access to the official docket, handed me a copy of the Final [PFA] Order from February 11th of 2020 and it is certainly filled out and signed by Judge Hilles.

[Defense Counsel]: But not sealed, Judge. I don't think either that or any sort of pandemic decreases the evidentiary standards for a self-authenticating document to be introduced in this case.

THE COURT: Well, I have a copy in my hand. As I just said -- I don't know if I have to repeat it again -- that my court clerk printed from the printer from the official docket. So I'll take judicial notice of the official docket.

[Defense Counsel]: Yes, Judge.

[The Commonwealth]: Thank you, Your Honor.

N.T. Hearing, 11/6/20, at 6-7. The PFA order was then entered into evidence.

*Id.* at 8.

On appeal, Appellant contends that the trial court erred by admitting the PFA order because it "did not bear a certification as required by Pa.R.E. 902

and no testimony was offered to verify the document's accuracy." Appellant's Brief at 9. Rule 902 states, in pertinent part:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> **(1) Domestic Public Documents That Are Sealed and Signed.** A document that bears:
>
>> (A) a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular possession of the United States; the former Panama Canal Zone; the Trust Territory of the Pacific Islands; a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and
>>
>> (B) a signature purporting to be an execution or attestation.
>
> **(2) Domestic Public Documents That Are Not Sealed But Are Signed and Certified.** A document that bears no seal if:
>
>> (A) it bears the signature of an officer or employee of an entity named in Rule 902(1)(A); and
>>
>> (B) another public officer who has a seal and official duties within that same entity certifies under seal--or its equivalent--that the signer has the official capacity and that the signature is genuine.
>
> **\*\*\***
>
> **(4) Certified Copies of Public Records.** A copy of an official record--or a copy of a document that was recorded or filed in a public office as authorized by law- if the copy is certified as correct by:
>
>> (A) the custodian or another person authorized to make the certification; or
>>
>> (B) a certificate that complies with Rule 902(1), (2), or (3), a statute or a rule prescribed by the Supreme Court.
>
> A certificate required by paragraph (4)(B) may include a handwritten signature, a copy of a handwritten signature, a computer generated signature, or a signature created,

transmitted, received, or stored by electronic means, by the signer or by someone with the signer's authorization. A seal may, but need not, be raised.

Pa.R.E. 902(1)-(2), (4).

Appellant contends that the Commonwealth made no effort to comply with Rule 902 but, instead, "attempted to circumvent its obligations under the rule by asking the [c]ourt to take judicial notice of the PFA order. The court, in turn, *sua sponte* directed the court clerk to print a copy of the order and then accepted it into evidence despite [Appellant's] objections to the authenticity of the document." Appellant's Brief at 11. He maintains that "the mere capability of ready and accurate verification is an insufficient basis for judicial relief. The record[] must disclose at least some reference to the authoritative source for a court to take judicial notice." *Id.* at 12 (quoting *In re D.S.*, 622 A.2d 954, 959 (Pa. Super. 1993)). Additionally, Appellant stresses that "a criminal conviction cannot stand based upon judicial notice of a disputable fact which otherwise lacks evidentiary support." *Id.* (quoting *In re D.S.*, 622 A.2d at 959).

Initially, the Commonwealth avers that Appellant has waived his claim for our review. It reasons:

> Here, the court took judicial notice of the final PFA order at the request of the Commonwealth. In objecting, [Appellant] only explained that the document was not self-authenticating. He offered no objection explaining why it would be improper for the court to take judicial notice of the final PFA [order]. Rather, the first time he mentioned his claim related to the court['s] taking judicial notice was in his brief. At that point, it was too late for the court to take any corrective action. Accordingly, [Appellant] waived his claims by failing to raise them before the lower court.

Commonwealth's Brief at 7 (citations omitted). The Commonwealth also argues that Appellant waived any challenge to the court's taking judicial notice of the PFA order by failing to raise this claim in his Rule 1925(b) statement. Therein, Appellant stated: "Did the lower court err in permitting the admission of the PFA underlying [Appellant's] charges where the Commonwealth failed to lay the proper foundation for its admission as a self-authenticating document under [Rule] 902?" Rule 1925(b) Statement, 4/1/21, at 1 ¶ 1.

We agree with the Commonwealth's waiver argument. At the hearing, Appellant objected to the admission of the PFA order only on the basis that it did not constitute a self-authenticating document under Rule 902. However, the court did not admit the PFA order as a self-authenticating document; it admitted it on the basis of judicial notice. Appellant did not challenge the court's decision in this regard. He did not raise any of the challenges to the court's taking judicial notice of the PFA order that he now sets forth on appeal. Moreover, Appellant made no mention of the court's taking judicial notice of the PFA order in his Rule 1925(b) statement. Accordingly, his challenge to the admission of the PFA order is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Nevertheless, even if not waived, we would conclude that Appellant's argument fails to demonstrate an abuse of discretion by the trial court. Judicial notice is governed by Pa.R.E. 201, which states:

**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

**(c) Taking Notice.** The court:

(1) may take judicial notice on its own; or

(2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

**(d) Timing.** The court may take judicial notice at any stage of the proceeding.

**(e) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

Pa.R.E. 201.

In this case, the trial court took judicial notice of the PFA order at the request of the Commonwealth. In the presence of the parties, the court's clerk printed a copy of that order from the official court docket and handed it to the judge. *See* TCO at 8. "The court noted on the record that the February 11, 2020 Final PFA Order was filled out and signed by Judge Hilles." *Id.* The Commonwealth explained that it was unable to get the document sealed

because of the Covid-19 pandemic. Moreover, the Commonwealth presented testimony about the PFA order, and the amendments thereto via the custody orders. For instance, Flores testified that she had a PFA order against Appellant, and Appellant himself twice acknowledged that he knew there was a PFA order against him when he went to Flores' home on the day of the incident. *See* N.T. Hearing at 6, 35, 40. Flores also testified about the amendments to the PFA order that were made in the custody orders, *id.* at 10, and Appellant admitted those custody orders, which explicitly amended the PFA order entered on February 11, 2020. *Id.* at 10, 23, 25.

Based on these circumstances, we would agree with the Commonwealth that "there [was] no real issue over the existence and validity of the PFA order." Commonwealth's Brief at 12-13. Moreover, the authenticity of the PFA order could "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[,]" namely, the official court docket. Pa.R.E. 201(b)(2). Accordingly, even if not waived, we would discern no abuse of discretion in the court's taking judicial notice of the final PFA order. *See Commonwealth v. Swarner*, 2019 WL 7174582, at *2 (Pa. Super. filed Dec. 24, 2019) (unpublished memorandum) (finding that the court did not abuse its discretion by taking judicial notice of a PFA order where its existence and validity were established through testimony of witnesses).[2]

---

[2] Non-precedential decisions filed after May 1, 2019, may be cited for persuasive value. *See* Pa. Super. Ct. IOP § 65.37(B).

In Appellant's next issue, he challenges the sufficiency of the evidence to support his ICC conviction. To begin, we note our standard of review:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Our Court has also explained:

A charge of [ICC] consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. *Commonwealth v. Padilla*, 885 A.2d 994 (Pa. Super. 2005).

"Where a PFA order is involved, an [ICC] charge is designed to seek punishment for violation of the protective order." *Id.* at 996. As with those accused of any crime, "one charged with [ICC] is to be provided the safeguards which statute and criminal procedures afford." *Id.* at 996–97 (citation omitted). To establish [ICC], the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. *Commonwealth v. Ashton*, 824 A.2d 1198, 1202 (Pa. Super. 2003).

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007).

In the case *sub judice*, Appellant first claims that the evidence was insufficient to support his ICC conviction because the Commonwealth failed to

establish the existence of the PFA order. *See* Appellant's Brief at 15. Reiterating the arguments he made in his first issue, Appellant contends that the Commonwealth did not present a sealed or certified copy of the PFA order in compliance with Pa.R.E. 902, and the court's taking judicial notice of the order was erroneous. Because we conclude, for the reasons set forth *supra*, that Appellant's challenge to the admission of the PFA order is waived and nonetheless meritless, his claim that the Commonwealth failed to prove the existence of the PFA order also lacks merit.

Appellant next claims that the evidence was insufficient to sustain his ICC conviction because the order, and amendments thereto, did not give him sufficient notice as to the type of conduct proscribed. *See id.* at 16 (citation omitted). He maintains that the "confusion as to the exact parameters of the PFA order" was "evidenced by the testimony of [Flores,] who herself was under the mistaken impression that [Appellant] was permitted to come to her residence to have contact with the children." *Id.* (citing N.T. Hearing at 10, 12). In the portions of the record cited by Appellant, Flores was asked if, "[u]nder the PFA, … [Appellant] is allowed to be at the house," to which she replied, "He can come for the kids. He can come pick up the kids." N.T. Hearing at 10. Later, Flores again stated that, under the custody orders amending the PFA order, Appellant was allowed to have contact with the children. *See id.* at 11. When the court noted that the language of the original PFA order barred all contact between Appellant and Flores, the following exchange occurred:

> [Flores]: Yes. But in the [c]ustody [o]rder it does -- the judge did override that part in the [c]ustody [o]rder and grant[ed] him contact. He's allowed contact in regards to the kids.
>
> THE COURT: Okay. So he's allowed to come to your house as you just described?
>
> [Flores]: I don't think it was very clear.

*Id.* at 11-12.

According to Appellant, this testimony by Flores supports his position that the PFA order, and the custody orders amending it, were unclear on what exact conduct was proscribed and, therefore, his ICC conviction must be overturned. He also asserts, in the fourth sub-claim of his sufficiency challenge, that the evidence "failed to establish that [he] acted with wrongful intent designed to deliberately disregard the [c]ourt's order." Appellant's Brief at 17.

We are unconvinced by Appellant's arguments. Even if we accepted Appellant's contention that the PFA and custody order amendments are confusing as to when, where, and how he can contact his children, exchange custody with Flores, and/or communicate with her about custody matters, his conduct in the present case had ***nothing to do with*** his children. ***See*** TCO at 12 (noting that Appellant "admitted at the hearing that custody of the minor children was never exchanged between the parties on [the] day" of the incident); *id.* at 13 (crediting Flores' testimony that Appellant told her via text that "he was not coming to [her] home to take custody of the minor children"). Instead, the evidence demonstrated that Appellant "came to Flores' home on October 13, 2020 for reasons not having to do with a custody exchange of the

- 14 -

minor children, broke the glass on the back door of her home, physically assaulted her, and took her cell phone." ***Id.*** The original PFA order adequately placed Appellant on notice that this type of harassing and assaultive conduct was prohibited, and nothing in the custody-order amendments cast doubt on that fact. Thus, the evidence was sufficient to prove that Appellant knew his conduct would violate the PFA order, yet he deliberately engaged in it anyway. No relief is due.

Finally, Appellant claims that his ICC conviction must be reversed because there was no evidence that he was served with the PFA order. This assertion is meritless. As the trial court observes, Appellant "appeared at the February 11, 2020 [f]inal PFA [h]earing … and was provided a copy of the [f]inal PFA [o]rder by the court at the conclusion of the … hearing." TCO at 9. Appellant offers no argument as to why this means of service was inadequate. Thus, his final sufficiency claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/21